# THE UNITED STATES DISTRICT COURT
# NORTHER DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20CR669 |
|---|---|---|
| Plaintiff, | ) ) | JUDGE JOHN ADAMS |
| v. | ) ) | **ORDER** |
| DALLAS HILLMAN, | ) ) ) | (Resolves Doc. 44) |
| Defendant. | ) | |

This matter comes before the Court on a motion seeking a *Franks* hearing and a motion to suppress. The two-part motion is DENIED.

The *Franks* Court set out the standard a defendant must satisfy to warrant a hearing as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations *must be accompanied by an offer of proof*. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978) (emphasis added). This high initial burden is designed to prevent defendants from abusing the process and to ensure that frivolous claims do not result in mini-trials. *Id.* at 170.

Hillman attempts to demonstrate that the affidavit at issue is rife with false and misleading statements. However, a bulk of Hillman's assertions are either his subjective view of

statements in the affidavit or complaints regarding the investigation techniques that were utilized. For example, Hillman asserts:

> Following is a list of reckless or deliberate statements and omissions contained in the affidavit:
>
> 1. A reliable and credible Confidential Source provided information to the government regarding Mr. Hillman. Here, the Confidential Source had only been engaged with law enforcement for a few months prior to this investigation and there is no indicia of reliability or corroboration of said reliability demonstrated though convictions or otherwise. Search and Seizure Warrants at ¶ 16 – 17.

Doc. 44 at 3. While Hillman appears to take issue with the description of the Confidential Source ("CS") as reliable, he offers nothing to suggest why this statement was false. The affidavit details that the CS was first used several months before the controlled buy at issue and offers specific details that the CS provided that were independently corroborated by law enforcement. As such, Hillman's conclusory statement that the affidavit was recklessly false when asserting that the CS was reliable has no support in the record.

Hillman's motion continues with 11 additional paragraphs asserting that nearly every significant portion of the affidavit contained false information. Similar to the above, Hillman routinely raises legal arguments and defenses in his motion rather than pointing to any factual information that was false. For example, Hillman contends that he was not the residential custodian of search warrant location ("SWL") number 3 because he was merely the landlord. Nothing about that argument undercuts any of the *factual* assertions contained in the affidavit. Moreover, Hillman repeatedly asserts that a review of the video surveillance does not support the facts in the affidavit. Again though, Hillman offers nothing more than his own conclusory

statements in support of his argument.¹ Accordingly, he has fallen well short of his burden to justify a *Franks* hearing

Hillman next contends that the affidavit failed to establish probable cause to search the three residences at issue. "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (internal quotation marks omitted). The existence of probable cause must be determined using a "totality of the circumstances" test; that is, the question is whether, given all of the facts known to the police officer, there is a fair probability that contraband or evidence will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

An affidavit in support of "a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises to be searched." *United States v. Blakeney*, 942 F.2d 1001, 1025 (6th Cir. 1991). However, probable cause does require a "substantial basis" for concluding that evidence of a crime will be found at the location to be searched. *Id*. (citing *Gates*, 462 U.S. at 238).

The 22-page affidavit at issue begins by explaining Task Force Officer Orlando Almonte's experience as a narcotics detective over more than a decade. Following that recitation, the affidavit notes that Almonte began using a CS in March of 2020. Almonte notes: "To date, the CS has conducted several controlled purchases for agents in both this investigation and other current / ongoing investigations, and their information has been determined to be

---

¹ At best, Hillman identifies a possible typographical error that has the first controlled buy listed as occurring on June 23, 2020 in one paragraph and June 30, 2020 in another paragraph. However, as detailed below, this error did not impact any probable cause finding.

3

reliable and credible." Doc. 44 at 39. In June of 2020, the CS informed Almonte that one of his sources of heroin was an individual that went by "DAL." Almonte was later able to confirm that that DAL was Dallas Hillman. The CS described Hillman as a black male in his forties that owned a convenience store. The CS further described numerous vehicles that he believed were owned or routinely driven by Hillman. Almonte was able to verify all of the information provided by the CS.

The CS then notified Almonte that Hillman had contacted him and advised he was in possession of heroin to sell. After the CS confirmed Hillman's identity through a BMV photo, Almonte ran a records check on him.

> A records check of HILLMAN's criminal history revealed that it included charges for Possession of Cocaine (1991); Trafficking in Cocaine and Possession of Criminal Tools (1992); Drug Abuse (1995); Drug Possession and Possession of Criminal Tools (1995); Possession of Crack Cocaine and Illegal Conveyance of Drug in a Detention Facility (2005); Trafficking in Drugs, Possession of Drugs, Endangering Children and Possession of Criminal Tools (2009); and Parole Violation (2019).

Doc. 44 at 40. As a result of his most recent conviction, Hillman was being supervised by the Ohio Adult Parole Authority. Almonte learned that the APA had approved for Hillman to reside at 20350 Naumann Ave., Euclid, OH, a residence owned by his mother. Surveillance on the Naumann Avenue residence between June 3 and June 16, 2020 raised suspicion of drug activity because trash was never placed on the tree lawn for three straight weeks despite observations that the house was continuously occupied. Almonte opined that he believed this to be a mechanism to evade officers from performing a trash pull to search for evidence of drug trafficking.

On June 22, 2020, the CS arranged for a controlled buy of 25 grams of narcotics. On June 23, 2020, Hillman called the CS and informed him that he was in the area of Cliffview Road in Cleveland, OH. The two agreed that the buy would take place at a Mobil gas station on

185th street in Cleveland. At roughly 12:40 p.m. on June 23, 2020, officers observed a white Nissan four door sedan enter the Mobil parking lot and pull next to the vehicle driven by the CS. The CS exited his car and entered the white sedan where the drug transaction took place. Lab results later confirmed that the CS had purchased 26.47 grams of a mixture of heroin and fentanyl. After the transaction concluded, Hillman left the Mobile gas station and proceeded directly to 18800 Pasnow Ave., Euclid, OH. Officers noted that other vehicles already present at that location were owned by Hillman. On that same day, at roughly 2:53 p.m., officers observed a black Buick sedan park in the street in from of the Pasnow Avenue home. Officers observed who they believed to be Hillman leave the residence and engage in what they believed to be a hand-to-hand drug transaction with the driver of the black sedan. A review of Hillman's APA records revealed that his wife, Rhonda Robinson-Hillman, had a listed address of 18800 Pasnow Avenue.

Similar to the Naumann Avenue address, officers attempted a trash pull at the Pasnow Avenue address. Once again, officers were unsuccessful. However, officers witnessed Hillman walk to the trash bin as the garbage truck was coming through the neighborhood. As a result, no trash could be collected from the Pasnow Avenue residence during that first attempt. However, on July 3, 2020, officers successfully executed a trash pull. The trash pull revealed "loose marijuana in the trash from what appeared to be several broken marijuana cigarettes, drug packaging material which consisted of numerous plastic baggies with the corners torn off or 'tear offs', and mailings to other family members." Doc. 44 at 46. These mailings included mail addressed to both the Naumann Avenue and the Pasnow Avenue residences.

Further investigation revealed that Hillman and several relatives also owned a residence at 18057 Weston Road, Cleveland, OH. On July 7, 2020, the CS set up a second controlled buy

5

for 30 grams of the same product that was purchased in the first controlled buy. At 11:53 a.m., the CS called Hillman and advised that he was ready to meet to finalize the second controlled buy. At roughly 12:00 p.m., an individual left the Weston Road residence driving a Mitsubishi Outlander. The Outlander drove to the location that had been agreed-upon for the second controlled buy. At shortly after 12:13 p.m., Hillman also arrived at the agreed-upon meeting location.

> HILLMAN then exited the minivan empty handed and walk over to the Mitsubishi Outlander. Investigators then observed HILLMAN reach into the Mitsubishi Outlander via the driver side window, retrieve an item and proceeded to walk over to the CS vehicle then enter it via the passenger side. Once inside, based on the video recorded footage later reviewed by investigators, HILLMAN is seen exchanging the same item he retrieved for the money.

Doc. 44 at 49. Hillman then drove straight to the Pasnow Avenue home. The driver of the Outlander proceeded to a location known to be frequented by drug traffickers and then returned to the Weston Road residence.

Based upon the above information contained in the affidavit, there was ample evidence to find probable cause to search each of the residences tied to Hillman. Officers observed efforts at the Naumann Avenue residence to avoid any trash pull by officers. When officers were able to effectuate a trash pull at the Pasnow Avenue residence, they found evidence of drug trafficking and mail addressed to the Naumann Avenue. In addition, officers routinely viewed three of Hillman's vehicles at the Naumann Avenue residence that were used in the two controlled buys. With respect to the Pasnow Avenue residence, officers observed Hillman engage in a hand-to-hand drug transaction directly in front of the home. Moreover, Hillman left from the Pasnow Avenue address to complete the second controlled buy and returned to it directly after the buy was complete. Finally, an individual later identified as Timothy Clemons departed from the Weston Road residence and drove directly to the meeting point for the second controlled buy.

6

By the observations of the officers, Clemons delivered the drugs to Hillman that were then sold to the CS.  With one stop along the way, Clemons then returned to the Weston Road residence.

Each of the pieces of evidence above tied Hillman's alleged drug trafficking activities to each of the three residences.  As such, probable cause existed for the warrant to issue to search of the residences.

Hillman's motion for a *Franks* hearing and to suppress the evidence against him is DENIED.

IT IS SO ORDERED.

    August 20. 2021                                */s/ Judge John R. Adams*
                                                      JUDGE JOHN R. ADAMS
                                                      UNITED STATES DISTRICT COURT